14-3978 Williska A. Velez, et al. v. Cuyahoga Metropolitan Housing Authority Argument not to exceed 15 minutes per side. Mr. Isken, you may proceed for the appellate. Good morning. I'm Peter Isken, attorney for appellants. I'd like to reserve two minutes for rebuttal. This case concerns a federal rent subsidy program known as the Voucher Program. In the program, families lease rental units in the private market, the family pays 30% of its income for rent, and the voucher subsidy pays the remainder of the contract. Also, after the first year, the family landlord may select a month-to-month lease, a short-term lease, or a one-year lease. In the private market, landlords require tenants to pay a higher amount for a month-to-month or short-term lease than for a one-year lease. The higher amount is sometimes labeled with additional rent, and it's sometimes labeled with a fee. In this case, the higher amount is labeled a fee, and the month-to-month fee is $100 per month. The issue of this bill is whether, when landlords label the higher amount a fee instead of additional rent, the fee is still part of the rent for the voucher program. The answer to this issue will determine whether the fee is made by the subsidy or by the tenant. The parties agree that the fee is consideration for the lease term, a month-to-month or short-term lease instead of a one-year lease. The parties disagree with respect to the fee relative to the common law definition of rent and relative to the housing service provision in the regulations. The common law definition of rent applies because the statute and the regulations use the term rent but do not define it. Ordinary meaning of the term rent is the common law definition. Under common law, rent is consideration for the use and occupancy of real property for a specified term. Since the fee is consideration for a specified term, the fee is part of the consideration for the use and occupancy of real property for a specified term. Therefore, the fee is part of the rent under the common law definition. CMHA's only argument on this issue is its baseless position that the definition of rent does not include the specified term element. The specified term element is well established in the case law. And it also should be noted that if the specified term element were excluded from the definition of rent as CMHA suggests, it would produce an absurd result. It would mean that rent is consideration for the use and occupancy of real property for an unlimited or unknown period of time, irrespective of the amount and frequency of the rent payment. For example, a $500 per month rent payment would not be consideration for the right to reside in the rental unit for a month or for any particular period of time. The District Court erroneously concludes that the fee is consideration only for the flexibility of a short-term lease and not for the use and occupancy of the rental unit. The flaw in the District Court's position is its failure to recognize that the lease term is not an element independent of the lease. The lease term, along with the rental unit description and rental amount, are the three required elements of a lease. A lease provides a tenant with the right of occupancy for a specified rental unit, for a specified term, for a specified rental amount. The lease term is an integral part of this occupancy right. Again, a lease does not create a right of occupancy for an unlimited or unknown period of time. The fee is consideration for the lease term, a month-to-month or short-term lease. A feature of these lease terms is that the tenant has the flexibility to move sooner than under a one-year lease. Another feature of these lease terms is that the tenant's right to remain in the property is limited to a shorter time than under a one-year lease. Regardless of these features, the fee is consideration for the lease term. As a result, the fee is part of the consideration for the use and occupancy of the real property for the specified term. I'd like to ask you one question about the standard that we're going to be applying here. This rent assistance program was enacted by Congress for some money that was spent in the court, right? I think that's part of the basis for it, yes. When Congress enacts this sort of program, Medicaid being an example, where it enters into this sort of bargain with the state that we're going to provide some benefit, and the state's going to take on an obligation, the case law in our circuit, and in the Supreme Court, our circuit, the case being A.P. Thompson, A.J. G.H.G., Mrs. Thompson. The case law, I think, is clear and says that if Congress is imposing an obligation on the state, it has to be so clearly. Is everybody familiar with this? I'm familiar with it, yes. It's not really brief, but it's something we can obviously affirm for any basis of the record. I think this is something we should talk about. So that case basically says that before a state or state subsidiary like the defendants here can be found to have an obligation under this federal program, the imposition of that obligation has to be clear under the federal law. And so, I guess, number one, do you agree with that standard? And number two, does that create a difficulty for you here, given the murkiness of what we're asking for? It does not. And the reason is that the— Do you agree as to the obligation? I agree to the standard that you're talking about. In the Wright decision, which is cited in the briefs, Wright versus, I forget the— The U.S. Supreme Court held that the rent provision of the U.S. Housing Act of 1937 is sufficiently specific for the tenants to enforce that right. And the U.S. Supreme Court reaffirmed the Wright decision. And the case is hitting me at the moment. But in a later decision where they further develop that area of law you're referencing. So that—and if you look at a recent Fifth Circuit decision, which got the voucher program, they relied on Wright in those decisions. And so, while there are other provisions of the U.S. Housing Act that may be subject to scrutiny, you're talking about here, it's very clear from the U.S. Supreme Court that the rent provisions that set the rent for the tenants may be enforced. But doesn't it need to be clear that these fees, or whatever you want to call them, are part of the rent obligation? Well, the—what we're enforcing is the rent provision of the statute, which we clearly have a right to enforce. And then the question is simply, you know, do these fees fall under that rent provision? So that's an interpretation of what is the fee. If the fee is part of the rent, then it is clearly enforceable. We're not talking about whether a statutory provision is clear. The statute clearly gives the right to the rent formula. I guess what I'm suggesting is that the clarity acquired by Haight and these other cases reaches the issue before us, that it has to be clear that these fees are—not just that they have to pay rent, but also, in this case, that these fees are part of that obligation before we can enforce that obligation. Well, I would submit that it is clear, but I'm not— I think it's a factual determination in this case as to whether they fall under the definition of rent for purposes of the statute. I think that the statutory right is clear and enforceable. But I think it's also clear that these fees are part of the rent because they are for the lease term, and rent is the consideration for the use and occupancy of the real property for the lease term, for the specified lease term. The case law says a lease is—it conveys a real property for a prescribed period of time in consideration for rent. That means rent is consideration for the use and occupancy of that real property for the prescribed period of time, the specified term. So it's clearly an element of rent. The fee simply reflects the private market price of these leases. The shorter the lease term, the higher the price. Sometimes it's labeled additional rent, and sometimes it's labeled a fee. It makes no difference. Have I answered you? Yes, sir. With respect to the regulations, they use the term rent and rent-to-owner, but again, do not define those terms. Instead, the regulations simply provide examples of items that are included within the term rent. Any optional housing-related services, any maintenance, any utilities that the lease requires the landlord to provide and pay for. These examples are not an exclusive list for the reasons set forth in the brief of appellants. CMHA argues that the examples are an exclusive list and that the term housing services encompasses the rent for leasing a rental unit under a one-year lease, but not the increased rent for leasing a rental unit under a month-to-month or short-term lease. CMHA focuses on the absence of the fee in a one-year lease and the landlord's willingness to execute a one-year lease. But the voucher program permits the tenants and landlords to slide from month-to-month and short-term leases. The fee is consideration for the leaser. The voucher program rent sub-fee rules are the same for the month-to-month and short-term leases as they are for the one-year leases. Under those rules, the fee are part of the rent because the fee are part of the consideration for the use and occupancy of real property for the specified term. There is nothing in the HUD regulations or voucher programs to suggest that HUD intends the term rent other than the ordinary meaning of that term under common law, especially since the program relies on the private market. So, well, I mean, the fact that some contracts in a regular term with the landlord call this rent and others call it fee, I mean, that itself suggests that there is some ambiguity in common usage. I mean, this is like, you know, real practice in the world as to whether these things are. It's simply a different label for the same thing. And if the concept is what is rent? Consideration for the use and occupancy of real property for a specified term. If you call it a fee, it doesn't change what it is. It's everybody agrees that it is consideration for the lease term. Then you get to the definition of what's rent. If part of the proponent of the definition of rent is the lease term, then that means the fee is part of the rent. So we can say, you know, if the term housing services encompasses the occupancy under a lease term, then it encompasses the rent for leasing a rental unit under any lease term. And that means including the month-to-month-to-short-term leases under which, of course, the fee is part of the rent. I'd like to say just one thing in terms of the 1983 statute of limitations. I just contend that Hatcher's claim for the 2008 fees aren't barred by the statute of limitations because of the continued violation doctrine. CMHA opposes that contention on one ground. It claims it did not have a policy in 2008 on whether the fee is part of the rent. CMHA's position is baseless because it stipulated that since October 2005, it has had a practice of treating the fee as part of the rent. Thank you. I'll reserve the rest of my time for rebuttal. Go ahead. Good morning. May it please the Court, my name is Catherine Miley, and I have the privilege of representing the Cuyahoga Metropolitan Housing Authority. And as you're aware, we're asking that you affirm the lower court's decision in this case. CMHA is the oldest housing authority in the United States, and in addition to public housing, it is probably – well, it's definitely the largest administrator of vouchers in Cuyahoga County. There are a couple of smaller entities that have some vouchers as well. Our position is that we did not violate any provision in the statute or in the regulations. As counsel stated, rent is not defined in the statute, unfortunately. Rent to owner is defined in the statute. Rent to owner is the total monthly rent payable to the owner under the lease for the unit. Rent to owner covers payment for any housing services, maintenance, and utilities that the owner is required to provide and pay for. So there's some other definitions that cover, you know, who pays for utilities and things like that. But as you're getting, this isn't the last case that we just heard with Walmart. This case is very factually limited to specifics and is solely a legal question. So the question becomes is, what is rent? Counsel would argue that rent to owner, excuse me, rent would cover optional housing services, and I don't see any case law or authority for that. He does argue that the common law, and the phrase he kept using today was that the common law definition of rent would be consideration for use of a property for a specified term. But when you, excuse me, when we look at the cases that counsel cited, most of them have the first part of that, that the rent is a consideration for use of the property. He does cite two cases that throw in the term specified term. But they aren't cases that are looking at defining rent. They were cases that were looking to define a lease. One was a tax case about whether an arrangement was a lease for tax purposes. The other one was whether a relationship. Go ahead. The only thing that they're getting for that money is the use of the housing for, it's still consideration for the use of the housing. They're not getting something extra. It's just a different rate for a shorter time. It's just a different, it's just an extra cost for the same thing. You mean what they're getting for the fee, the higher dollar? Yes. To keep it simple, let's say the rent is $500 if you sign a year lease. They don't want to sign a year lease so the fee for month to month is $100. Right. What the experts and the witnesses have all said is sure, the $500 is clearly rent. The only thing they're getting for that extra bump is the convenience of leaving early or the potential to leave early. The landlord was willing to rent for the lower dollar amount on the agreement that the tenant signed a new lease. And the tenants in this case either chose to. But it's not a set fee. Excuse me? But they're not saying, okay, it's $500 a month. And when you leave, you have to pay an extra $200 for the inconvenience. It's the monthly rate changes. They can call it whatever they want, but the reality is that the monthly rate changes. That's why some landlords call it rent. They just have a different rate for the length of the lease. And some call it a fee, but it's just a jack-up price in the rent for a shorter term. It's not fixed by the expense of leaving. If you're there a year, you're paying $100 a month. If you're there three months, you're paying $300. You're paying $100 a month. It has nothing to do with the actual cost. In fact, it's in reverse proportion to the actual cost because you're paying more for staying there longer. I just know that you're not getting anything else for that money except the right to stay in that unit. You're not getting anything else for the money, period, because you could have paid the lower amount. I agree with what you're saying that I don't necessarily agree with the fees, but I don't oppose them. You'd have to talk to the landlord's attorneys on that. And they're not part of this portion of the appeal, and that's not part of the case. Nobody has sued contesting the fees. That's a whole different question. But to us, if the landlord is willing to take my example to be round numbers, $500, that's the rent. What are they getting for the $100? It's not the ability to stay in the unit. The landlord is not willing to take $500. That's the point. The landlord will not take $500 for that unit unless I take it for a year. Yes. And if you won't take it for a year, he will not take $500 a month. He's going to insist on $600 a month, and your rent in that case is $600 a month. Just to distinguish a little bit, as counsel has said, and he's argued throughout, they claim that some landlords just charge a higher rent amount and some charge a fee. The higher rent amount cases aren't before us because I don't know of any. We wouldn't necessarily know that. These fee arrangements are something that happened outside of us, and we're only finding out about them after the fact. So the cases that allegedly happened where the landlord charges a higher rent instead of charging a fee, they're somehow getting approved either because we didn't know about it or they're otherwise meeting the other standards that become a problem in this case. Okay, let me just say this. The only question before us is whether it's rent. Right. Your liability and the consequences of the fact that it hasn't been submitted to you and all the rest of it is not before us. It's before you in the context of looking at interpreting it in the regulatory context. The specific facts, you don't have to get to that, no, in this specific case. You could because it was briefed below that your trial judge never got to it. I understand that. I'm just making clear that this does not – I don't know how my colleagues feel, okay? But even in the event that two of us conclude or three of us conclude it's rent, it's not a decision of your liability. That has to go back. I'm making clear that that has to go back to the district court. Right, he did not get to that at the lower court. Correct. The regulation on that, though, it does get into how we interpret the ambiguity in the lack of a definition because the regulatory context, as you can guess, is this is all federal money. It's heavily regulated. We don't have to get into the calculation as to who pays what. The question is, as you said, is this rent? So that affects what goes into line one of the whole calculation that would have to go forward. But the rent owner must be in the lease. These fees are not in the leases. These are hypothetical. The leases that are submitted to CMHA both say the rent is X, and at the end of the one-year term, if you don't sign a new lease, you might have a potential for fees. But doesn't this lease or at least one of them actually call it rent? There's a couple of later leases that are between the two parties, meaning the landlord and the tenant, that had a dollar on it. They were never submitted to the housing authority. But that's a different issue. That's a different issue. Again, it just relates to the regulatory context. So a rent has to be in the lease, or it has to be on an application for rent increase. Rent increases cannot be automatic. They would have to come back to the authority to say, at least 60 days in advance, they would have to say, we would like to do a rent increase. Please do all your imaginable rent reasonableness calculations. See, that's what I'm saying. I don't see why I think that is relevant. That has to do with whether you'd be liable or not. But right now, it's a legal question whether this is rent. And if I'm not mistaken, one of them says, resident who pays $7.99 plus $75 once a month fee equals $8.74 per pound a month for rent increase. That's going to get you to the part that you were mentioning. That was never submitted to CMHA, so that would affect what you're saying. Why isn't it rent? I think that's the only one that says that. The rest of them say rent is X. And then at the end of that paragraph, it says, and at the end, there might be a fee if you carry over, whether you go to short-term lease or month-to-month. Let's talk about a different kind of lease. Okay. As it compares to car loans. Okay. All right, so you go down to the Ford dealer. You want to give a vote. They say, all right, I just want to do a lease. I want a new car. And they say, all right, if you do a 24-month lease, the car is $300. If you do a 36-month lease, the car is $250. Why? Because cars appreciate much more of the strictly front end of their service life. And obviously, we have a shorter time to amortize that appreciation for the 24-month lease. So, in other words, similar to here, the seller's cost is higher for the 24-month lease. You still would say that the person who gets the 24-month lease is just paying for the use of the car, right? You wouldn't think of that as, well, they're paying for the use of the car, and I think on top of that, there's a marginal separate payment for the flexibility of the term. Isn't that kind of what's happening here? Just, you know, it's occupancy, but you need an analog to use the car. In some ways it is, but in other ways, like you said, there's different depreciation issues. There's not a federally regulated relationship. Yes, but I mean, the point is that the seller's cost, the lessor's cost, is higher. It is higher. You know, they have to reimburse. They have transaction costs. I think the big difference in those is the depreciation issues on cars is so weird. You drive off the lot, and don't they say it goes down to $5,000? It's different because cars have wheels, and apartments don't. I didn't go that simplistic. Yeah, I think it's just the nature of what you're leasing. Not even just federally regulated. Leases and rental relationships are so regulated. They're very different. Residential leases are so different as well. Another issue that comes up in the regulatory context that I see being inconsistent is that these are private landlords. They are required to treat all subsidized tenants the same as they treat market tenants. So the whole relationship going forward as to how we would treat these, like, for example, a K&G group who has multiple tenants has to use the same lease forms. They have to charge them the same rents. In order to prove that they're charging them the same rents, they have to submit to the Housing Authority rent rules. I forget if it's annually or however often, showing that everybody getting the same size unit is getting the same rent. It's going to run afoul of those kinds of relationships as well if we start treating them differently. Both sides have experts, and the experts both agree that the compensation that they got for the $100 was the luxury or counsel objects to the word luxury. The convenience of leaving early or the ability to possibly leave early or terminate within a 30-day notice or a shorter period of notice. The other regulation that is potentially inconsistent with treating these fees as rent is Miss Hatcher's lease. I think that was one of the ones you were looking at, Your Honor. Miss Hatcher's tenancy shows the potential for this. Rent can't be increased more than once a year, and if these fees are allowed and they're considered rent, if you go from a one-year lease term, which, by the way, the initial lease term has to be a year. That's just a matter of law. After that, the tenant and the landlord are free to agree to whatever they want. At the end of the year, if the tenant goes from one year with no fee to a nine-month lease, which I want to say was $35 at some point, and at the end of nine months goes month to month, it's going to go up several times in the course of the year, the relationship and the interplay of all the regulations together really support finding that the fees are not rent. It all has the effect of eliminating the amount of subsidy, correct? Well, in this case, we're not eliminating anything because nobody ever asked for it, but proactively... It's lowering the subsidy. If it's not, if proactively somebody came to us and asked for it, it would be yes. It's not 100% that it's all going to be informed by the housing authority. It's all income-based. So, why would you develop a policy that permits a lessor to split out costs that get a bearing for furnishing the occupancy, furnishing the tenancy, in order to reduce the amount of subsidy that the tenant would receive? Why stop at splitting out the additional administrative expense that's associated with a shorter-term lease? Why don't we use other expenses in order to further reduce the subsidy? Why stop there? Well, in this case, just to clarify something, throughout the course of these two tenants' tenancy, we were never paying these fees. We were never asked to. We never had an official policy because we never thought about it. To get to your question, some fees cannot be carved out. I mean, if we were talking about this in the hallway, if a landlord decided to make a maintenance fee, they can't do that. It has to be rent. That's defined in rent-to-owner-whose-housing-maintenance utilities. Certain fees can't be carved out. So we're not trying to lower the subsidy. We're trying to follow the procedure so that we can maximize the amount of subsidy available to everybody. In this case, if we were to lose on it and we have to start paying fees, it's not anything—we'd have to figure out how to do it. It would mean that certain tenants would get more, but in the big picture, it would mean we'd serve fewer tenants. So it's not that we're trying to screw these specific tenants. Our reading of it is that this isn't rent. Certain things we would have to— we would have to insist that the landlord either stop charging it or put it on the rent application, and then it would be subject to all the reasonableness calculations, like maintenance. Utilities, they don't have to, but utilities— the leases have to specifically say those are different. They have to specifically say which are the tenants and which are the landlord, and we figure it that way. Part of this also is to make sure that the landlords aren't overcharging. Yes. So if you have a situation where— I mean, there's a market out there, and there's a standard or a range of, you know, a particular type of unit for two years. There's a range for a year, and then there's a range for short-term leases. And the effect of not counting this as rent is basically leaving it to the landlords to decide what they want to charge extra per month. But some landlords do include this in rent. And so what you have is a situation maybe where there are landlords that aren't including it in their short-term rental. There's another landlord who says, oh, well, he's charging $6.50. That means I can get that on the market rate. He jacks up his rent to $6.50. Everybody says it's okay. And then he's charging another $100 on top of that. And it seems that your policy is sort of working against the whole policy of the HUD regulations because it's leaving this sort of rogue fee out there that you have absolutely no control of and that it's just not coming into your system. Well, I will point out one thing. He said, you know, we have no control over these fees. And that's another issue I have with it personally is that we're somehow now paying them. No, but if they have to have their rent approved by you, whatever it is, the total, then you would have some effect on it. Right. One thing you said, you were talking about that there's a market rate for one-year leases, two-year leases, six-month, one-month. The problem with that, though, is there is something we haven't gotten into because it's very application-specific called the payment standard, which is an agreed-upon cap that rent plus utilities, rent plus tenant utilities has to fall under this. There is a payment standard. There's not three payment standards for a term of a tenancy. There's a payment standard. So there isn't, there aren't three different caps for different types of tenancies. And we're also required to look at what specific markets. So we're not comparing one-bedroom to two-bedroom or three-bedroom or one-bedroom in a really good neighborhood with great schools versus one-bedroom. They have to fall under multiple levels of reasonable. Help me out with this because I'm not following you. What are the levels? Does it depend on apartment size? It depends, the payment standard is apartment size. Okay. And that is established countywide. Okay. So there's a lot of variance within the county. I'm sorry. There's a lot of variance within the county. It is or isn't? It is. But I thought you said it's determined countywide. The standard itself is just a set number for our entire system. So it's going to apply everywhere. But then they have to look at, and we didn't get to this whole lot below, then they have to look at the specific market. So what you can charge for, I'm not familiar with suburban Cincinnati, but what you can charge for a Section 8 unit in Shanker Heights versus Cleveland is not going to be the same. So they look at it on multiple levels. But there's nothing in those that would differentiate between us as we're looking at reasonableness. There's no guidance that how we would compare them because we'd still have to compare all the rents in that area. I'm sorry. I just want to. Sure. It does go by number. It goes by number of rooms. Number of rooms, what's included. Because some leases and rents include all utilities, some don't. So you can't compare. But it doesn't go by term of lease? No. Okay. So in determining what is an acceptable rent in an area for a certain size unit, you would be including all the rents, short-term, five-year, all of them. And then we also have to look at what that specific landlord is charging. In this case, Lopenberry Ridge, I don't remember how many units, but it's a decent-sized apartment building. So K&D, the landlord, would have to submit the rent roll for the entire building, and we have to show that this specific landlord is being consistent in his rents as well. And it's one thing that HUD is very concerned on is making sure that subsidy tenants aren't paying more than non-subsidy tenants. Are not. Are not, right. Okay. So there's multiple levels of reasonableness, and there's currently no differentiation between terms. Yes, but can you see how you would want to know what the real rent is? You'd want to know what the time factor is so that you had a real sense of what the rents were and also so that the landlords weren't treating people differently because this landlord could charge the Section 8 tenant more for the convenience and not charge the non-Section 8 tenant. That would be a whole different lawsuit. But yes, that would be definitely prohibited. No, but they could. They could. Under this. And the problem that we get back with the facts of this case is nobody ever comes to us and says, hey, by the way, this piece just got triggered. So unfortunately, if they're doing side agreements, side agreements are allowed as long as they don't cover rent to owner. So you could have a side agreement for, you know, food, I guess, if it's a senior building or something. That's specifically not right in the regs. So side agreements aren't illegal as long as it's not a way to circumvent those caps we were talking about. So, for example, if the cap is $1,000 for this type of unit and the landlord doesn't like that, they can't go back and say, well, I'm going to charge you a utility fee of $100 and not tell CMHA about it. So side agreements we're supposed to see, but we don't see. But, yes, there's always the potential that the landlord would do that. I would completely agree that if that was the case here, that K&D was only charging subsidy to NSOCs, there would be a huge problem. This suit probably wouldn't have been filed and we'd have a different piece of litigation going on. Well, what do you do about the fact that some landlords treat it as rent and some don't? The problem in this case is it's not before us, and the experts have said that. I don't know of any. I can't pull any landlord's file to look at it and say, how did that get approved? I even looked at the gentleman the plaintiff's retaining to see if I could find any units that he personally had or his company had, and I can't find any. So to me, if it's rent, if it is not rent, if you affirm and agree with me that this is not rent, jacking it up because of that would have to come out, but the problem would be you would have to know about it. And I don't know. They could be right. There could be landlords doing this. And if it's a landlord with a single unit, it could pass all those comparison statutes. I mean, write down reasonable comparisons. I don't see how a K&D group with, you know, whatever, 100 units in this building would get away with it because we're going to look at the rent rule and say, there's 51 bedroom units paying $500, and you have two paying $600. What the heck? So it's conceptually before us. It's not factually before us. I don't have facts to see how that worked. But if it is not rent, they shouldn't be allowed to do it either. Okay. Can I? Are you saying that it would be illegal for them to have four tenants on a two-year lease paying $500 a month, and two of them are Section 8, and then another four tenants on a month-to-month paying $600 a month, two of them are Section 8? You're saying that that would not be permitted? I mean, isn't it? The regs don't contemplate that. Regs say we're supposed to look at the building in comparable units. So if you're going to create a definition of what the comparable unit is, we compare comparable units. Council would like us to do that. Council would like us to only compare units with a fee to units with a fee, and units without a fee to units without a fee. So in the situation we were just discussing hypothetically, if there's 48 units with no fee, we compare those to each other. If there's two units with a fee, we compare those to each other. That's not in the regs. Okay. I'm really confused with what you just said. I'm sorry. I don't know what your answer was. You've got a landlord that has Section 8 and non-Section 8 tenants. He's treating them all the same. Yes. They're all, if you're on a short term, you're paying the fee. It doesn't matter if you're Section 8 or not. If you have a one-year lease, this is your rent. It doesn't matter if you're Section 8. If you're willing to take a three-year, your rent's a little bit less. It doesn't matter if you're Section 8. Is that okay? It depends what you rule. That's the problem. The regulation doesn't contemplate that. The regulation says you compare comparable units in the building. It doesn't say, and by comparable I mean two-year lease people versus one-year lease people. That's not in the regs. I think it would be illegal because you shouldn't be. It would be illegal? If it's rent, then you can't. I think you've got to have authority. Think about the short term. You have to have landlords who are charging different amounts even for two-year and three-year leases. If the rent bill comes back, they're never identical. They have to justify it. It could be that this set of people is on the new year cycle, and this is when the rent went up, and so that's justifying it. Or they have to be able to come back and say, hey, Ms. Smith's unit is twice the size of Ms. Jones' unit. They have to justify it. If the only distinction is the term of the lease, whether it's illegal depends on whether or not. That's where that regulation is incompatible with treating it as rent because the regulation doesn't say what to do with that. It says we have to compare them to what's in the building. So the question is you'd have to say that this is what is comparable. What do I compare it to? I think they would still fail because, I mean, that's just me. I think if it went back, they're going to compare it to the whole building and say, well, you can't have certain units that for no reason are $100 more, and they're going to be rejected. And then we're going to have another lawsuit because somebody's going to say, well, we have to only compare it to this little tiny subset versus another tiny subset. And we can create subsets until the end of time that basically negate the value of comparing rents. I am seriously overwhelmed. So if anybody has any questions, but otherwise, thank you very much. Thank you. Yeah, I'd like to respond to one of these things. I'll do it quickly. I will be very quick about it. So first of all, the record does stipulate that some landlords charge higher amount as rent as opposed to quality of fee for the month-to-month and short-term. That's in the record. And there were actually two leases of patches. The rent reasonableness – there's a merger here going on between payment standard and rent reasonableness. The payment standard simply determines the amount of the subsidy. And so how do you think – Can you slow down? Sure. Well, I've got about two minutes here. So the payment standard determines the amount of the subsidy. The rent reasonableness determination is a separate matter. Okay? The payment standard is used to figure out how much subsidy – because if the rent is less than the payment standard, then the tenant pays 30%. If the rent is higher than the payment standard, then the tenant pays 30% plus the amount by which the rent is higher than the payment standard. That's it. The rent reasonableness determination simply requires that the landlord treat the market tenant the same as the voucher tenant. If they're month-to-month, then you have to charge them the same month-to-month. So it's a year. It doesn't prohibit different rent based on the length of the lease term. Okay? With respect to the issue of – well, the – there was a – you raised a question about the right of action in 1983. And in the appellant's brief, the brief of appellants, there's mention of right. And that decision was reaffirmed in Gonzaga, which you'll see in the brief of appellants. CMHA suggests it didn't have any policy on this matter of the fees. In fact, they stipulated that since 2005, it has been their practice not to treat the fee as part of the rent. And they told – in 2010, they told KAD, you do not have to treat the fee as part of the rent. So it's kind of a mystery why KAD did not put these fees to CMHA as part of the rent. They were told not to. The question about the leases, if you go from a one-year lease to a nine-month lease to another lease, there is that one-year rule. But if there's an automatic renewal provision, then when CMHA is reviewing that lease, they should be reviewing the reasonableness of the renewal provision because that's part of the rent in that lease that they're reviewing. If they want to prohibit renewal provisions, let them prohibit them. That's up to them. With respect to the nine-month lease and then going to a 12-month lease, that problem exists. It has nothing to do with whether or not you treat the fee as part of the rent. You have some leases, nine months, where the full rent is in the rent. It's rolled in. And in the other land, we'd have to wait three months to change the – that's just a problem in the program. Maybe they should avoid nine-month leases if they want to. I hope I've clarified some of it. Thank you. Thank you both for your arguments. This case will be submitted. Many cases are on the briefs. We're going to adjourn.